C. C. RANDOLPH, et al., v. H. F. SIMON & MORSE.

1. PRISON BOUNDS; *No Breach of Undertaking.* Where an undertaking for prison bounds is given under ﹩511 of the code of civil procedure, and the judgment debtor continues to reside within the limits of the county, and is endeavoring in good faith to comply with every letter of the undertaking, but ignorantly and through misapprehension from wrong information as to the exact location of the county line, steps for a few minutes a few feet outside the boundaries of the county, and upon being correctly informed as to the county line, immediately steps back across such line, *held,* that such slight, temporary and unintentional overstepping of the county line cannot be adjudged such a breach of the undertaking as to render his sureties liable for the debt.

2. JUDICIAL ORDER, *Not Adjudged Void.* Where the district court or judge is authorized by the statute to make an order, and an application is made by one party upon notice for such order, and both parties appear, and the application is such as to call for judicial consideration and action, and upon the hearing the order is made, *held,* that such order cannot be adjudged void in a collateral proceeding; and this notwithstanding that such order might have been set aside by proceedings in error on the ground that the facts presented were not sufficient to justify the order.

*Error from Sumner District Court.*

ACTION on an undertaking given under § 511 of the civil code, brought by *H. F. Simon & Morse* against *C. C. Randolph* as principal and *J. F. Hickman* and *John G. Woods* as sureties, for alleged breaches of the undertaking. Trial by the court without a jury, at the April Term, 1882, H. G. R., judge *pro tem.,* presiding, and judgment for plaintiffs. The defendants bring the case here. The facts are stated in the opinion.

*Herrick & George,* and *J. M. Graham,* for plaintiffs in error.

*Isaac G. Reed,* for defendants in error.

The opinion of the court was delivered by

BREWER, J.: This was an action on an undertaking given under § 511, code of civil procedure; and the principal question is, whether the facts show any breach of that undertak-

ing. It appears that on the 23d of April, 1880, defendants in error obtained a personal judgment against C. C. Randolph, one of the plaintiffs in error. Thereafter, upon proper proceedings, an execution against the person having been issued, Randolph was arrested, and gave the undertaking sued on. Prison bounds, by said section, are coëxtensive with the limits of the county; and the condition of the undertaking is that if the debtor goes beyond the prison bounds before being discharged by law, the sureties will pay the amount of the judgment. All these proceedings were had in Sumner county; and the single question presented, as heretofore stated, is, whether the principal in the undertaking went outside the limits of Sumner county under such circumstances as to constitute a breach of the undertaking. Two breaches are alleged. The first arises on these facts: Geuda springs are situated on the county line between Sumner and Cowley counties. The bath house is in Cowley county, from sixty to one hundred feet east of the county line. Randolph visited the springs one Sunday in company with some friends, and being informed and supposing that the bath house was within the limits of Sumner county, went thither. After being there a few minutes he was informed that the bath house was in Cowley county, and east of the Sumner county line. Immediately thereafter he returned west of the line; and the question now is, whether that constituted a breach of the undertaking. Tried by the letter of the undertaking, unquestionably it was, for the bath house was in fact a few feet east of the line. The sureties in the undertaking stipulated that if Randolph went outside the county limits, they would pay the debt. He did in fact go outside the county line; therefore, as counsel for defendants in error argues, there was an unquestioned and voluntary breach of the terms of the undertaking. It matters not that Randolph's action was through mistake, that in fact he was but a few feet over the county line, and there but for a few minutes — it is as much a breach as though he had intentionally gone miles beyond the county line and there stayed for months. In support of this

he cites the following authorities: *Burrows v. Lowder*, 8 Mass. 373; *Reed v. Fullom*, 2 Pick. 158; *Trull v. Wheeler*, 19 Pick. 240; *Farley v. Randall*, 22 Pick. 146; *Illsey v. Jewett*, 3 Metc. 430; *Bissell v. Kip*, 5 Johns. 89. We have examined these authorities, and think they sustain the claim of defendants in error. They lay down the proposition, that any overstepping of the prison limits, no matter how minute or unintentional, constitutes a breach of the undertaking which renders the sureties liable for the amount of the debt. This was in harmony with the general course of ruling at the common law, which laid great stress on minuteness, exactness, and form; and which by its subordination to matters of form and technicality, compelled the growth and development of the coördinate and beneficial system of equity, whose cardinal doctrine is to regard substance rather than form. To-day the two systems are blended. The healthful principles of equity permeate all the rules and proceedings of law, and courts of justice in administering the rights of parties look beyond the form and the letter to the substance and spirit. Tried by these healthier rules of interpretation, what is the intent and purpose of a debtor's undertaking, like the one in question? The procedure assimilates that of the old equity proceeding of *ne exeat*. The purpose is to keep the debtor within the jurisdiction of the court, so that the proceeds of his labor may be reached by the process of the court and subjected to the payment of the debt. It is not intended as a trap to catch the sureties, and to transfer to them the burden of the debtor's obligation. It means that the debtor shall stay within the limits of the county; that while he has freedom to pursue his ordinary business, he shall yet be within reach of the process of the court, so that the proceeds of his labor, and the profits of his business, may be reached by like process for the payment of his debt. Now in the case at bar, the debtor was striving to obey the stipulations of the undertaking. He was intending to live up to its terms. Before going to the springs he made inquiry, and was informed that they were within the limits of Sumner county. He was acting in the utmost good

faith, intending to remain within the jurisdiction of the court, and to keep within the very letter of his undertaking. As soon as he found the mistake, he returned within the limits of his county. And notwithstanding the stringency of the old rulings, we think his momentary, slight, and unintentional overstepping of the bounds of the county cannot be adjudged such a violation of the conditions of his undertaking as will render the sureties liable for his debt. We do not doubt that if the debtor intentionally passed beyond the county lines for ever so short a distance, or ever so few moments, or if he went beyond them carelessly, without inquiry, and in utter indifference to the obligations of the undertaking, it would have to be adjudged a breach. But nothing of that kind appears in this case. Insurance policies often contain a stipulation that if the insured die by his own hand, the policy shall be void. But the general construction has been that this stipulation does not apply to cases in which in a state of insanity, or by an accidental blow, the insured kills himself. Only an intentional act is contemplated. Here there was no intentional breach. The language of the undertaking, "shall go," implies voluntary action. If Randolph had been carried forcibly and against his will outside the county, no breach would have been claimed; his action would not have been voluntary. He voluntarily, it is true, went to the bath house, but he did not intentionally go outside the county. There was no voluntary breach.

Again, where time contracts are entered into, courts will seize upon the slightest excuse to prevent a forfeiture, at least in all cases in which the adverse party has suffered no loss through the default. And here the obligees have suffered nothing from Randolph's act; he has not fled from the county; has not put himself beyond the jurisdiction of the court, and is not seeking to avoid any liability. We find in the later adjudications no decision upon a question like this. The old idea of the law, that the debtor is a criminal, has long since passed away. It is simply a memory, a tradition and

*1. Prison bounds; no breach of undertaking.*

a fossil. The person of the debtor is now taken only in case of fraud, and even then he can obtain the freedom of the county, and his continued presence within the county is insisted upon, rather as a means to secure the proceeds of his further labor, than as a punishment. In harmony with this, and with the general equitable rulings of the day, it seems to us that a mere technical, slight, temporary and unintentional overstepping of the limits of the county, should not be adjudged a breach of the undertaking. The cases of *Douner v. Dana*, 19 Vt. 338, and *Perkins v. Dana*, 19 Vt. 589, tend to sustain this view. In those cases it appeared that a tree stood some rods exterior to the jail limits, established by the county court, but that for many years the prison debtors had looked upon that tree as on the line of the jail limits, and had been in the habit of going to it. And it was held that one going to such tree had not violated the provisions of his jail bond. We think that decision right; that its spirit is in harmony with the general rule of decision to-day, and with the conclusion we have reached in this case. Indeed, we think the defendants in error are in a position to require the application of a similar rule, for several technical errors and defects are pointed out in their proceedings. None of them we think are matters of substance, or sufficient to invalidate the undertaking given by the plaintiffs in error, and yet they present technical departures from literal exactness.

The other breach alleged is in the fact that Randolph went to the state of Illinois; but this he did upon leave obtained from the judge of the district court. The power of the judge to grant such leave is denied: the power was exercised and leave given under § 514 of the code. That section authorizes the court or judge to discharge, on such terms as may be just, a person imprisoned "in case of his inability to perform the act, or to endure the imprisonment." Under this section application was made, after notice to the plaintiffs in the judgment, for leave for the imprisoned debtor to go to Illinois, on account of the illness of his wife. Upon the hearing of this application, the leave was given to him to be absent for the

term of thirty days. Before the expiration of the thirty days he returned, and has since remained within the county. Now it is claimed that this order was void; that the inability referred to in the statute is a personal and physical inability; that no such inability was alleged; and that therefore the court had no power to act. We cannot assent to this. Power is given by the statute to the court to grant a discharge on account of inability. Application was made under this statute. Notice of the application was given to the adverse party. Both parties were present: a showing was made, and the court acted. There was therefore a hearing before a competent tribunal, with jurisdiction of both parties; and the order made after such hearing cannot be adjudged void. Whether the court erred in its ruling upon the facts, whether the order was or was not erroneously made, can only be determined by proceedings in error. As long as there was enough to challenge judicial action, the order cannot be declared void in a collateral proceeding. (*Burke v. Wheat*, 22 Kas. 722; *Bryan v. Bauder*, 23 Kas. 95; *Hodgin v. Barton*, 23 Kas. 740.)

*2. Judicial order, not adjudged void.*

As these are the only two matters in which any breach of the undertaking is claimed, and as we think neither of them constitutes a breach, it follows that the district court erred. The judgment of the district court will therefore be reversed, and the case remanded with instructions to enter judgment upon the findings in favor of the plaintiffs in error, defendants below, for costs.

All the Justices concurring.