JOHN T. HICKMAN *et al.* v. C. H. FARGO & CO.

1. PRINCIPAL AND SURETY— *Statutory Bond—Principal Need not Sign.* Where there are several persons named in an undertaking for the release of a debtor from imprisonment and extending to him prison bounds, and one is named as principal and the others as sureties, and the undertaking is signed by the sureties only, and the debtor is released upon the execution of the undertaking and thereby confined within prison bounds, the sureties who sign the bond are held to the obligation which they have signed.

2. ————*Bond Strictly Construed.* Sureties on an undertaking that, if the debtor shall go beyond prison bounds before he is discharged by due course of law, they will pay a judgment rendered by the district court of S. county on the 22d day of April, 1890, for a certain sum as damages and the costs of suit in a certain sum, are entitled to stand upon the strict terms of the bond which they signed, and are not bound to pay a judgment rendered by the same court on some other day, for a different amount, between the same parties.

3. CIVIL ORDER OF ARREST—*Release from Prison Bounds—Liability of Sureties.* Where R. has been arrested by order of the court for fraudulently disposing of his property, and gives bond for his release from arrest, and is thereby confined to prison bounds, and his sureties undertake, agree and promise that if R. shall go beyond the prison bounds before being discharged according to law, they will pay the plaintiff the amount of the execution with interest and costs, and afterward the judge of the district court, upon proper notice being given and having all the parties to the suit before him, but, in the absence of the sureties on the undertaking, makes an order releasing R. from his prison bounds for 30 days, *held*, that his sureties are released from the obligation of the undertaking.

MEMORANDUM.—Error from Cowley district court; M. G. TROUP, judge. Action by C. H. Fargo, J. Benham, C. E. Fargo, and S. M. Fargo, copartners, doing business under the firm name and style of C. H. Fargo & Co., against John T. Hickman and John G. Woods. Judgment for plaintiffs. Defendants bring

the case here.   Reversed.   The opinion herein was filed November 9, 1895.

The statement of the case, as made by JOHNSON, P. J., is as follows :

This case was commenced in the district court of Sumner county and taken to Cowley county on change of venue, on account of the judge of the district court of Sumner county having been interested in the case as an attorney before his election as judge.   The case was finally tried before the court, without a jury. The petition of the plaintiffs was as follows :

"And the plaintiffs say that on or about the 21st day of April, A. D. 1880, they, by the consideration of said court, obtained a judgment duly rendered against one C. C. Randolph for the sum of $852.60 damages, and the further sum of $29 costs of said suit, together with interest on said judgment from the date thereof at the rate of 7 per cent. per annum ; that on the 19th day of June, A. D. 1880, the plaintiffs duly and legally obtained an execution against the person of the said C. C. Randolph on said judgment, which said execution against the person was duly and properly issued and delivered and directed to the sheriff of said Sumner county ; that said sheriff, by virtue of said execution, on the 19th day of June, A. D. 1880, arrested the said C. C. Randolph in said Sumner county ; that the said C. C. Randolph, as principal, and the said John T. Hickman and John G. Woods, as his sureties, on the 19th day of June, A. D. 1880, the said C. C. Randolph being then in the custody of said sheriff as a prisoner as aforesaid in Sumner county, made and executed an undertaking in and by which the defendants covenanted and agreed with these plaintiffs that if the said C. C. Randolph should go beyond prison bounds, to wit, beyond the boundary of the said county of Sumner, before being discharged according to law, they, the said defendants, would pay to C. H. Fargo & Co., the plaintiffs herein,

the said sum of $852.60 damages, together with $21 costs of the same suit, and all costs that should accrue on said judgment and all interest on the same ; that said undertaking and the sureties thereon were approved by the said sheriff, and that by the reason of the giving of said undertaking the said C. C. Randolph was by said sheriff released from said custody, and allowed to go without hindrance from said imprisonment. And the plaintiffs further say, that between the 1st day of December, A. D. 1882, and the 1st day of February, A. D. 1883, to wit, on or about the 26th day of December, A. D. 1882, the said C. C. Randolph went beyond said prison bounds, to wit, beyond the boundaries of the county of Sumner aforesaid, before being first discharged according to law, and went to the state of Illinois ; that since said 26th day of December, A. D. 1882, the said C. C. Randolph has remained and still continues to remain beyond the boundaries of the said county of Sumner, and that the said C. C. Randolph has not been discharged from said imprisonment according to law ; and that no part of said judgment has ever been paid. A copy of the said undertaking is hereto attached, marked ' Exhibit A,' and made a part of this petition.

"Wherefore the plaintiffs pray judgment against the said defendants for the sum of $870.61, with interest thereon at the rate of 7 per cent. per annum from the 21st day of April, A. D. 1880, together with their costs in and about this suit in that behalf expended."

"EXHIBIT A.

"Whereas, in a certain action in the district court of Sumner county, Kansas, wherein C. H. Fargo & Co. are plaintiffs and C. C. Randolph is defendant, the said C. H. Fargo & Co., on the 22d day of April, 1880, obtained a judgment against the said C. C. Randolph in the sum of $842.60, and the further sum of $121, costs of suit ; and, whereas, the said C. H. Fargo & Co., on the 5th day of June, 1880, by the consideration of said court obtained an execution against the person of the said judgment-debtor, the

said C. C. Randolph, on said judgment; and, whereas, the said C. C. Randolph has on said execution been arrested and is now in the custody of the sheriff of said Sumner county : Now, therefore, we, the said C. C. Randolph, as principal, and John T. Hickman and John G. Woods, as sureties, hereby undertake to said C. H. Fargo & Co., and promise and agree and hereby bind ourselves that if said C. C. Randolph shall go beyond prison bounds, to wit, beyond the boundary of said Sumner county before being discharged according to law, we, the said sureties, will pay to the said C. H. Fargo & Co., plaintiffs, the said sum of $842.60, said judgment, together with $121 costs thereon, and all costs that shall accrue on said judgment and all interest on said judgment.

"(Signed)     J. T. HICKMAN.

JOHN G. WOODS.

"Signed, sealed and delivered in my presence, and approved by me this 19th day of June, 1880.

"J. M. THRALLS, *Sheriff,*
"By FRANK EVANS, *Under-sheriff.*"

The defendants below, for their answer to the petition, set out the following :

"1. And now come the said defendants, and for answer to said plaintiffs' petition filed herein, state that they deny each and every allegation contained in said petition.

"2. That the said defendants are not indebted to said plaintiffs in the sum of $871.60, and interest thereon at the rate of 7 per cent. per annum from the 21st day of April, A. D. 1880, as stated in said petition, or in any other sum or amount whatever.

"3. That no order was made by the court or any judge, upon the affidavit of the plaintiffs or their attorney and other testimony authorizing the issuance of an execution against the person of C. C. Randolph, but that the said execution against the person of the said C. C. Randolph was issued without any such order and without the court or any judge being satisfied with such affidavit and other testimony therewith presented of the existence of any of the particulars or

causes of arrest enumerated in the statute ; and that, therefore the execution against the person of the said C. C. Randolph and also the bond predicated thereon are void, and therefore the said defendants are not liable thereon to said plaintiffs in any sum or amount whatever.

"4. That the said C. C. Randolph was unlawfully imprisoned by said plaintiffs and detained by the force and duress of the imprisonment of the said C. C. Randolph ; and the said John T. Hickman and John G. Woods, defendants, as his sureties, did not make and deliver the said writing or purported bond freely, but through fear of such unlawful imprisonment of the said C. C. Randolph, and to procure the release of the said C. C. Randolph from such unlawful imprisonment, and for no other cause or consideration.

"5. That the execution against the person of the said C. C. Randolph was issued under an order made by the court solely upon the affidavit of plaintiffs' attorney alone, and without any other testimony presented by said plaintiffs or their attorney to satisfy the court of the existence of any of the enumerated grounds of arrest.

"6. That the said pretended bond was executed by said defendants without any consideration therefor.

"7. That the said C. C. Randolph did not, between the 1st day of December, A. D. 1882, and the 1st day of February, A. D. 1883, to wit, on or about the 26th day of December, A. D. 1882, or at any time, go beyond said prison bounds and leave the said Sumner county and go to the state of Illinois, or to any other place beyond said prison bounds, before being first discharged according to law.

"Wherefore defendants herein ask judgment for costs."

In reply to the answer, the plaintiffs below stated the following :

"And now come the said plaintiffs, and for reply to the new matter alleged and set up in the answer of

said defendant in the above-entitled case, say that they deny each and every allegation, item and particular therein contained the same as though each was denied separately and in its order.''

At the beginning of the trial of the case the plaintiffs below offered in evidence a certified copy of the journal entry of a judgment in which C. H. Fargo, John Benham, Charles E. Fargo and Samuel M. Fargo were plaintiffs, and C. C. Randolph was defendant, which was the first evidence offered in the case. The defendant below objected to the introduction of any evidence in the case, for the reason that the petition of the plaintiffs below did not state facts sufficient to constitute a cause of action in favor of the plaintiffs and against the defendants. This objection was overruled, and the defendants below excepted.

*Tom George,* and *W. W. Schwinn,* for plaintiffs in error.

*Reed & Nebeker,* for defendants in error.

The opinion of the court was delivered by

JOHNSON, P. J.: The first question for the consideration of the court is, whether an undertaking to release a debtor from imprisonment under § 511 of the code of civil procedure, where the bond runs in the name of the debtor as principal and two other parties as sureties, and is executed by the sureties alone, is a valid obligation. Section 511 reads as follows :

''Any person imprisoned under the provisions of this article shall be entitled to prison bounds, which shall be coextensive with the county, upon executing an undertaking, with one or more sufficient sureties to be approved by the sheriff, to the effect that if the debtor go beyond the prison bounds before being discharged according to law, he will pay to the plain-

tiff the amount of the execution, with interest and costs ; but in case the person shall be out of jail, in prison bounds, the judgment-creditor, upon whose judgment he· was imprisoned, shall be entitled to execution against the lands and tenements, goods and chattels of the debtor, and all other remedies prescribed by this code for the collection of debts."

Counsel for plaintiffs in error contend that a bond running in the name of several persons, one as principal and the others as sureties, and subscribed only by the sureties, is an incomplete instrument, and that those signing it as sureties cannot be bound unless the principal also be bound ; that the statute authorizes the arrest and imprisonment of a debtor for fraud and provides for his release from confinement in prison, extending to him certain prison bounds, and prescribing the terms and conditions upon which he may be released from imprisonment and be permitted to go anywhere in the boundaries of the county in which he resides, and if he be released by the sheriff without signing the bond as required by the statute, the bond is void ; that the debtor, not having executed the bond, is under no legal or moral obligation to remain within the prison bounds unless he has been legally placed therein on the execution of the bond required by law ; that the bond being incomplete, either party might repudiate it; that, being a contract of suretyship, it could not exist without the correlative obligation of the principal, and that were the sureties to pay the amount of the bond they could not be subrogated to the rights of the plaintiff in the judgment. In order to comply with § 511 of the code of· civil procedure, the sheriff should have required the debtor to sign the bond before he released him from imprisonment. The undertaking in this case is not a statutory obligation ; but does that render this bond void? The

debtor was imprisoned under an order of the court find-
ing that he had fraudulently disposed of his property
to defraud his creditors ; that the sureties voluntarily
entered into this obligation to secure his release from
imprisonment ; that they obligated themselves that if
the said C. C. Randolph should go beyond the bound-
aries of Sumner county before being discharged accord-
ing to law, they, the said sureties, would pay the said
C. H. Fargo & Co., plaintiffs, the said sum of $842.60,
said judgment, together with $121 costs thereon, and
all costs that should accrue on said judgment and all
interest thereon ; that by reason of the execution of
this obligation they secured the release of the said C.
C. Randolph, and he was permitted to go at liberty
anywhere within the prison bounds.   While this does
not conform to the statute, it is certainly a good com-
mon-law obligation, and the sureties are bound by the
terms of this bond.   In the case of *Ingram v. The State*,
10 Kas. 635, VALENTINE, J., delivering the opinion of
the court, says :

"We think the said instrument is sufficient as a
recognizance, notwithstanding these supposed defects.
. . . It was given by the parties as such.   The
parties call it such in the instrument itself, and it was
taken and approved by the officer as such.   It is true
that that portion of the instrument which contains
the obligation is in the form of a penal bond, and not
in the form of a recognizance. . . . The defend-
ants signed and executed this instrument, and it was
not necessary in order to bind them that D. A. Ingram
should have signed or executed it."

In the case of *Tillson v. The State*, 29 Kas. 456,
Philip Masterson was arrested on a complaint charg-
ing him with an assault with intent to commit a rape,
and was taken before George M. Everline, a justice of
the peace, for a preliminary examination.   The exami-

nation was continued, and W. S. Tillson signed an obligation that Masterson would appear·at the time to which the case had been adjourned to answer such charge.   Masterson did not sign the bond of recognizance for his own appearance, and it was contended for that reason that the bond was void; that Masterson, not having entered into the recognizance himself, there was no obligation on his part to appear; and that, Masterson not being obligated to appear, his surety was not bound.   The supreme court says:

"The point that the recognizance is void because the accused did not sign the same we think is not tenable. At common law it was never necessary for any person to sign the recognizance; and under the statute it is necessary only for those to sign the recognizance who are bound thereby; and it is never necessary under the statutes for the accused to sign the recognizance, unless the statutes absolutely require the same to be done. . . . In this state every recognizance is several as well as joint, and any one or more of the persons who sign the same may be sued for a breach thereof.   Even where the accused signs the recognizance as well as a surety, the surety alone may be sued without joining his principal with him.   Of course, under § 45 of the criminal code, it would be very proper for the accused as well as the surety to sign the recognizance; and possibly it would be the duty of the magistrate in all cases to require him to do so; but his failing to do so we do not think will render the recognizance void as against the surety."

We do not think that this bond is so incomplete as to render it absolutely void, but think that it is good as an obligation against these sureties.

The second reason assigned by the plaintiffs in error why plaintiffs below could not recover on the undertaking sued on in this action is that the petition alleges —

"That on the 21st day of April, 1880, the plaintiffs

below, by the consideration of said court, obtained a judgment duly rendered against one C. C. Randolph for the sum of $842.60 damages, and the further sum of $21 costs of suit, while the execution upon which C. C. Randolph was arrested recites a judgment rendered on the 22d day of April, 1880, being the fourth judicial day of the term of the court, for the sum of $842.60 and for the further sum of $121 costs of suit, and the undertaking of these plaintiffs in error recites a judgment rendered on the 22d day of April, 1880, in favor of C. H. Fargo & Co., against C. C. Randolph, for the sum of $842.60, and the further sum of $121 costs of suit, and the sureties promise, agree and thereby bind themselves that, if C. C. Randolph should go beyond the prison bounds before being discharged according to law, they would pay to the said C. H. Fargo & Co., plaintiffs, said sum of $842.60, said judgment, together with $121 costs thereof; and the record of judgment produced in evidence on the trial of this case recites a judgment rendered in favor of C. H. Fargo & Co., against C. C. Randolph, for the sum of $842.60, and the further sum of $29.15 costs of suit. Done at Wellington, Kas., in said county, on the 21st day of April, 1880, said day being the third judicial day of the April term of said court."

No principle is more firmly settled than this — that sureties may stand on the very terms of the undertaking or bond they executed. The sureties in this case obligated themselves that in case C. C. Randolph should go beyond prison bounds before he was discharged according to law, they would pay the judgment and costs·stated in the execution and in the undertaking, and not a judgment rendered at some other time and for a different amount. They did not agree or promise to pay a judgment rendered on the 21st day of April, 1880, the third judicial day of the term of court, but a judgment rendered on the 22d day of April, the fourth judicial day of the term, and for a·different amount. While it is true the judg-

ment and costs stated in the petition of the plaintiffs below and in the copy of the record introduced in evidence on the trial of the case were for a smaller amount than the one referred to in the execution upon which C. C. Randolph was arrested, and the one set out in the prison bond, yet it was not the judgment and costs that these sureties obligated themselves to pay, if C. C. Randolph went beyond prison bounds, and they are not liable to pay any other judgment than the one stated in the bond. A surety is entitled to a strict and literal performance of the contract that he signs. There are no equities against him, and he is only bound by the letter of his agreement. (Chitty on Contracts, 529.)

In the case of *Miller v. Stewart*, 9 Wheat. 702, Story, J., delivering the opinion of the court, says :

"Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract. To the extent and in the manner and under the circumstances pointed out in his obligation he is bound, and no further. It is not sufficient that he may sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract ; and if he does not assent to any variation of it, and a variation is made, it is fatal. And courts of equity, as well as of law, have been in the constant habit of scanning the contracts of sureties with considerable strictness."

In the case of *Lang v. Pike*, 27 Ohio St. 501, Ashburn, J., delivering the opinion of the court, says :

"No principle is more firmly settled in this state than this, that sureties may stand on the very terms of a statutory bond or undertaking. So clearly has this doctrine been announced and acted upon, that it may be regarded as entering into the condition of such

45—APP.

an undertaking, that it will not be extended by the courts beyond the necessary import of the words used. It will not be implied that the surety has undertaken to do more or other than what is expressed in such obligation.''

The supreme court of Ohio, in the case of *Hall v. Williamson*, 9 Ohio St. 17, holds :

'' In a suit against a surety on an injunction bond, conditioned for the payment of all moneys due or to become due upon a judgment for the sum of $2,300 and costs in favor of the obligee and against the principal in case the injunction should be dissolved, the plaintiff could not give in evidence a judgment for $2,346.06 and costs, although in other respects it answered to the judgment mentioned in the conditions of the bond.''

The judge, delivering the opinion of the court, says :

'' The action was against the surety, and a recovery could therefore only be had against him strictly upon the contract into which as surety he had so entered. The surety upon the injunction bond being in nowise liable upon the judgment, and having received no consideration for executing such bond as surety, ought not in equity, and could not in law, be holden to the judgment-creditor except by force of the obligation as clearly expressed by the terms of the bond which he had so voluntarily executed. No principle of law is better settled generally, and none has been more explicitly interpreted in this state, than that a surety can only be bound by the terms of his undertaking.''

In the case of the *Bank of Steubenville v. Carrol's Adm'rs*, 5 Ohio, 207, the court says :

'' No principle is better settled at the present day than that a surety cannot be further bound than by the terms of his undertaking.''

And again, in the case of *The State v. Crooks*, 7 Ohio,

573, Judge Hitchcock, in giving the opinion of the court, uses the following language :

"No principle is better settled, perhaps, than that securities shall not be bound beyond the scope of their undertaking."

In the case of *The State v. Medary*, 17 Ohio, 554, in giving its opinion in relation to the liability of the sureties upon their bond, the court says :

"The bond speaks for itself, and the law is that it shall so speak, and that the liability of sureties is limited to the exact letter of the bond. Sureties stand upon the words of the bond, and if the words will not make them liable, nothing can ; there is no construction and no equity against sureties."

In the case of *Ryan v. Williams*, 29 Kas. 487, 497, the action was originally commenced in the district court of Leavenworth county by H. T. Green, as administrator of the estate of Theodore Jones, deceased, against Jacob McMurtry, to recover a certain amount claimed to be due from McMurtry to Jones at the time of Jones's death ; during the pendency of this suit the district court ordered the plaintiff, Green, as administrator, to give security for costs, which the plaintiff, H. T. Green, as administrator, did by cost bond signed by Matthew Ryan, and, after giving bond for costs, H. T. Green, administrator, resigned, and Robert Adams was duly appointed and qualified as successor of Green, and the action was afterward revived in the name of Robert Adams, as administrator of the estate of Theodore Jones, deceased ; and thereafter a trial was had in said action, and resulted in a judgment being rendered in favor of the defendant and against Robert Adams, as administrator, etc., for costs of suit. The costs of suit not being paid, a motion was filed by the defendant, and, on proper no-

tice given in accordance with the provisions of § 585 of the civil code, asking that judgment be rendered in favor of the defendant and against Matthew Ryan, the surety on the cost bond for the amount of costs. the motion was heard by the court, and judgment was rendered against Ryan for all costs in the action, to which judgment he duly excepted and took the. case to the supreme court, and the supreme court held the judgment erroneous.   VALENTINE, J., speaking for the court, says :

" We think the judgment in the present case is erroneous.   Many courts hold that a surety on a bond is liable only within the strict letter of his bond, and no court holds that a surety is liable beyond the reasonable implications of his bond.   The bond in all cases must speak for itself, and sureties may always stand upon its literal terms, or upon its literal terms and its reasonable implications, and if these do not make the surety liable, nothing else can.   No far-fetched equities nor overstrained constructions are allowable as against sureties.   Their bond expresses their contract, sets forth their obligation, and defines their liability, and we are not at liberty to resort to extraneous matters to enlarge their liability.   In the present case, Ryan did not bind himself to pay any costs except such as might be included in a judgment rendered against Henry T. Green, as administrator of the estate of Theodore Jones, deceased."

The case of *Hays v. Closon,* 20 Kas. 120, was an action on an undertaking in proceedings in error from the judgment of a justice of the peace in an action for unlawful detention of real estate.   The surety signed an undertaking that he would pay for the use and occupancy of the real estate from the date of the undertaking until the plaintiff in error should deliver up possession pursuant to the judgment and pay costs.   The proceedings in error were decided ad-

versely to the plaintiff in error and he was evicted from the premises, and suit was brought against the surety on the undertaking, and on trial judgment was rendered against him for rents that had accrued before the execution of the undertaking, to which he duly excepted, and brought the case to the supreme court for its decision.   HORTON, C. J., says:

"The makers of the bond never agreed to pay any rents which were due at the execution of the written instrument signed by them, and the district court had no power to increase or enlarge the terms of such instrument to their prejudice.   The law will not create a liability against sureties which they did not intend to bring on themselves and which is not within the express conditions of the bond."

In the case of *Henrie v. Buck*, 39 Kas. 385, the supreme court holds:

"The obligors upon the bond are mere sureties, and they have a right to insist upon the express terms of the undertaking.   It is a recognized rule of the law that the liability of sureties to a statutory undertaking cannot be extended by implication, nor enlarged beyond the express terms of their contract."

The case of *Grant v. Naylor*, 4 Cranch, 225, was a suit in assumpsit on a letter of credit addressed to John and Joseph Naylor & Co., England, requesting them to furnish goods, wares and merchandise to John Hackett, for the firm of Hackett & Grant, the writer guaranteeing the payment of such goods as they might sell said firm.   Goods were sold to this firm on the faith of this letter of credit; but there was no such firm at Wakefield, England, by the name of John and Joseph Naylor & Co.   The names of the members of the firm were John and Jeremiah Naylor & Co.   Marshall, C. J., delivering the opinion of the court, says:

"In this case three points are made by the plaintiff

in error on the letter which constitutes the basis of this action. He contends, 1st. That this letter being a collateral undertaking, and being addressed to John and Joseph Naylor & Co., the plaintiffs below cannot be admitted to prove by parol testimony that it was intended for and is an *assumpsit* to John and Jeremiah Naylor. 2d. That the undertaking was conditional, and required notice to be given to the writer of the intent and nature of his liability. 3d. That it is confined to the shipments made during the year in which it was written. On the first objection the court has felt considerable difficulty. That the letter was really designed for John and Jeremiah Naylor cannot be doubted, but the principles which require that the promise to pay the debt of another shall be in writing, and which will not permit a written contract to be explained by parol testimony, originate in a general and a wise policy which this court cannot relax so far as to except from its operation cases within the principles. . . . It being the opinion of a majority of the court that John and Jeremiah Naylor could not maintain their action on this letter, it becomes unnecessary to consider the other points which were made at the bar.''

The third and last reason urged by the plaintiffs in error why the plaintiffs below should not recover in this case is that, notwithstanding they were not bound by the undertaking signed by them to pay the judgment recited in the petition of plaintiffs below and contained in the copy of the record produced on the trial of the case, in September, 1881, C. C. Randolph was released from his imprisonment under said arrest by an order of the judge of the district court, at which time the attorneys for the plaintiffs below were present and made their exceptions to the order ; and, also, that on the 24th day of January, 1882, the judge of the district court again made an order discharging C. C. Randolph from his prison bounds, which is as follows :

''And now, on motion, comes said defendant, C. C.

Randolph, by his attorneys, Herrick, George & Graham, the plaintiff appearing specially and objecting to the consideration of this motion for the reason that the judge of said court has no power or authority to entertain or hear the same; which objection was overruled and excepted to.  Defendant asked to be released from prison bounds; and it appearing that the said defendant, C. C. Randolph, heretofore committed to prison bounds in said county by virtue of an execution against his person in the above-entitled action is bereaved of a sister, who died January 23, 1882, and is desirous of attending her funeral: It is therefore ordered that the said C. C. Randolph be and is hereby released from his said prison bounds until the 24th day of February, 1882.  To which order the plaintiff excepted.  Witness my hand at chambers, at the city of Winfield, Kas., January 24, 1882.— E. S. TORRANCE, *Judge*."

Section 514 of the code of civil procedure confers jurisdiction on the judge of the district court to discharge from imprisonment a debtor who has been arrested and held to prison bounds, on such terms as are just. (*Randolph v. Simon*, 29 Kas. 411.)

The debtor having given notice of his application for a discharge, and the parties all being present, the judge made the two several orders discharging him and giving him permission to go to the state of Illinois and beyond the prison bounds.  This certainly was a discharge from prison bounds, for which sureties had obligated themselves that if said C. C. Randolph went beyond the boundaries of Sumner county before he was discharged according to law they would pay the judgment and costs. . Having been duly discharged by proceedings properly had before an officer having jurisdiction to discharge, we do not think that his sureties could be longer held upon their undertaking. They only undertook that he would not go beyond the prison bounds until discharged under due process of

law, and being once discharged and permitted to go it released his sureties under their undertaking. The sureties were only held by the express conditions contained in their bond; the defendants not being liable for the payment of the judgment rendered on the 21st day of April and the costs of suit thereon, it follows that the plaintiffs below were not entitled to a judgment in this case.

The case is reversed and sent back to the district court with directions that judgment be entered for the defendants for costs of suit.

All the Judges concurring.